947 F.2d 948
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kennis BUTLER and Rodney Phillips, Petitioners-Appellants,
v.
Thomas RICHARDS** and Attorney General of
the State of Indiana, Respondents-Appellees.
 Nos. 89-3635, 89-3732.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 10, 1991.*
Decided Oct. 24, 1991.
 
 Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Kennis Butler and Rodney Phillips appeal from the district court's denial of their petitions for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Butler and Phillips assert various challenges to their state court convictions for robbery and criminal recklessness. By order of this court dated April 5, 1990, these cases were consolidated for purposes of disposition.
 
 I.
 
 2
 Butler and Phillips were charged along with Edward Pointer and McKinley Dudley with armed robbery of a bank in Indiana. A fifth man, Cecil Lewis, admitted his participation in the robbery. However, Lewis was not charged as he was given immunity from prosecution in exchange for his cooperation.
 
 
 3
 Butler, Phillips, and Pointer drove to the bank. Butler and Phillips entered the bank armed with handguns and escaped with $8,835. Pointer waited outside in the car to facilitate their escape. A high speed chase followed during which Phillips fired shots at the police. Eventually all three of the occupants of the car were captured and the money was recovered.
 
 
 4
 The record also reveals that the participants had discussed the robbery in the days preceding the crime and agreed to split the money equally. Dudley supplied Butler and Phillips with the guns that they carried in the robbery. In addition, Dudley agreed to provide the switch get away car. While Butler, Phillips, and Pointer drove to the bank, Dudley and Lewis drove to a prearranged switch point. Apparently when Dudley arrived at the place where he and Lewis were to meet the other participants, he decided to abandon the project and they drove in the direction of Gary, Indiana.
 
 
 5
 Pointer, who was originally charged as a co-defendant, testified against Butler, Phillips, and Dudley at their joint trial in exchange for a reduced sentence. Prior to his testimony, Pointer was questioned about his nervousness and he was permitted to testify as to an anonymous threatening telephone call he had received on the previous evening. Counsel for the other co-defendants objected to the testimony, asked that it be stricken, and moved for a mistrial, alleging that the state was attempting to prejudice the defendants by tying them to the anonymous threats. The trial court denied both the motion to strike and the motion for a mistrial.
 
 
 6
 Following the trial, Phillips and Butler were convicted of armed robbery and criminal recklessness. Dudley was convicted of aiding a robbery and found to be an habitual offender. Phillips, Butler, and Dudley filed a joint appeal to the Indiana Supreme Court which affirmed their convictions. Dudley v. State, 480 N.E.2d 881 (Ind.1985).
 
 
 7
 Dudley filed a petition for writ of habeas corpus which was denied in the district court. On appeal to this court, we reversed the denial of the petition, finding that the admission of the threat testimony by Pointer was error and that it could not be characterized as harmless as it related to Dudley. Dudley v. Duckworth, 854 F.2d 967 (7th Cir.1988), cert. denied, 490 U.S. 1011 (1989). The decision in Dudley rested upon a determination that only the inherently unreliable testimony of Dudley's co-participants, Lewis and Pointer, had implicated Dudley in the crime. In addition, this court noted that to the extent that the threats could be attributed to Dudley, they completely undermined his alibi defense.
 
 
 8
 In the district court, both Butler and Phillips relied on the decision in Dudley to support their claim that they too were entitled to relief on the basis of the erroneous admission of the threat testimony at their trial. The district court determined, however, that any error that resulted from the admission of the threat testimony was harmless as it related to Butler and Phillips. The district court also denied relief on the other grounds raised in the respective petitions. This appeal followed.
 
 II.
 A. Evidentiary Rulings
 
 9
 The admissibility of evidence in a state court proceeding is primarily a matter of state law and a federal court will not review the state court rulings to determine whether the court correctly applied the law. On a petition for writ of habeas corpus, a federal court will not review evidentiary questions unless "there is a resultant denial of fundamental fairness or the denial of a specific constitutional right." United States ex rel. DiGiacomo v. Franzen, 680 F.2d 515, 517 (7th Cir.1982).
 
 1. Admission of the Threat Testimony
 
 10
 Both Butler and Phillips assert that, like their co-defendant McKinley Dudley, they are entitled to relief because of the trial court's erroneous admission of the testimony from Pointer that he had received threatening telephone calls on the night before his testimony. Butler and Phillips rely heavily on this court's decision granting the writ as to their co-defendant Dudley. However, their cases present different circumstances than that of Dudley because of the variance in the nature of the evidence of guilt against them.
 
 
 11
 In granting the writ as to Dudley, this court emphasized that the decision was premised upon the fact that Dudley had only been implicated in the robbery by his co-participants, Pointer and Lewis, who were cooperating with the prosecution. As such, the Dudley court recognized that their testimony was inherently unreliable. In addition, this court noted that the inadmissible testimony also was extremely detrimental to Dudley's alibi defense. Those concerns simply do not exist in either the case of Butler or Phillips.
 
 
 12
 Both Butler and Phillips were identified by eyewitnesses in the bank as the men who entered the bank and committed the robbery and as the robbers depicted in the surveillance photographs. The surveillance photographs were also admitted in evidence permitting the jury to evaluate whether Butler and Phillips were the individuals depicted therein. In addition, both Butler and Phillips were apprehended, following a high speed chase, in possession of the money taken from the bank, including the marked bills. Finally, Phillips and Butler admitted their participation in the robbery. As such, it appears that the evidence of guilt against Butler and Phillips was overwhelming and any error resulting from the admission of the threat testimony was harmless beyond a reasonable doubt.
 
 B. Admission of Prior Bad Acts Evidence
 
 13
 Butler also alleges error in the trial court's failure to declare a mistrial after the admission of prior bad acts evidence against him. During his testimony, Cecil Lewis testified that he and Butler were planning the bank robbery while they were on the way to rob a liquor store. Butler's counsel objected to the testimony and moved for a mistrial. The trial court struck the testimony from the record and admonished the jury to disregard it, however, the court denied the motion for a mistrial. In his brief on appeal, Butler focused on the cumulative effect of the improper admission of the prior bad acts testimony in conjunction with the admission of the threat testimony, arguing that he was denied a fair trial because the jury's decision was improperly influenced by the combination of the improperly admitted testimony.
 
 
 14
 The introduction of improper evidence of other crimes will not support a grant of the writ. See Stomner v. Kolb, 903 F.2d 1123, 1129 (7th Cir.), cert. denied, 111 S.Ct. 305 (1990); United States ex rel. Searcy v. Greer, 768 F.2d 906, 910 (7th Cir.), cert. denied, 474 U.S. 966 (1985). The questioning concerning other crimes did not create a fundamentally unfair trial separately or when considered cumulatively with the threat testimony.
 
 C. Voluntariness of Butler's Confession
 
 15
 Butler also asserts that his confession was not voluntarily given. In its review of the challenge to the voluntariness of the confession, the Indiana Supreme Court resolved the conflicting evidence in favor of the state. The Indiana Supreme Court found that Butler was taken to the police station immediately following his arrest, where he was advised of his Miranda rights. However, Butler refused to sign a written waiver of rights form. Thereafter, the police officers stopped questioning Butler, but the booking process continued. During the booking process, Butler confessed his participation in the robbery on his own initiative and not in response to questions from the officers.
 
 
 16
 It is well-established that the ultimate question of whether a confession was given voluntarily is a question of law requiring independent federal determination. Ray v. Duckworth, 881 F.2d 512, 517 (7th Cir.1989) (citing Miller v. Fenton, 474 U.S. 104, 112, 106 S.Ct. 445, 450 (1985)). However,
 
 
 17
 subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant. The law is clear that state court findings on such matters are conclusive on the habeas court if fairly supported in the record....
 
 
 18
 Ray, 881 F.2d at 517 (quoting Miller, 474 U.S. at 117, 106 S.Ct. at 453). The state court findings with respect to the circumstances relating to Butler's confession are binding upon us in this case because our review of the record indicates that they are fairly supported in the record. At most, Butler is bringing a challenge to the state court's decision to credit the officer's testimony concerning the circumstance of the confession over that of Butler. We will not disturb such credibility determinations in a habeas proceeding.
 
 
 19
 Our acceptance of the state court's interpretation of the circumstances surrounding Butler's confession is determinative of the question of the voluntariness of his confession. It is well-settled that the "test for a voluntary confession is 'whether the defendant's will was overborne at the time he confessed.' " United States v. Hocking, 860 F.2d 769, 774 (7th Cir.1988) (quoting Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 920 (1963)). Accordingly, coercive police activity is a 'necessary predicate' to a determination that a confession was not voluntarily made. [United States v.] Fazio, 914 [F.2d 950,] 955 [ (7th Cir.1990) ] (quoting Colorado v. Connelly, 479 U.S. 157, 166, 107 S.Ct. 515, 521 (1986))." United States v. Haddon, 927 F.2d 942, 945-46 (7th Cir.1991). The only coercion that Butler asserts is his claim that the police continued to question him during the booking procedure after he had refused to sign the waiver of rights form. That issue has already been conclusively resolved against Butler in the state court findings. Nothing else in the record supports the inference that the police engaged in coercive activity sufficient to overcome Butler's free will. Therefore, we find that Butler's challenge to the voluntariness of his confession is without merit.
 
 D. Denial of Psychiatric Examination
 
 20
 In his final issue on appeal, Butler asserts error in the trial court's denial of his motion for a psychiatric examination to determine his competency to stand trial. After Butler filed his motion, the trial court held a hearing outside the presence of the jury. At the hearing, Butler's mother testified that there was a history of mental illness in the family and that Butler had seen psychiatrists, psychologists and social workers until he was sixteen years old for his emotional problems. Butler did not present any additional testimony at the hearing and after considering the testimony from Butler's mother, the trial judge denied the motion without ordering a psychiatric evaluation.
 
 
 21
 In United States ex rel. Lewis v. Lane, 822 F.2d 703 (7th Cir.1987), this court enunciated the standard for evaluating a claim in a habeas corpus proceeding that the state court used inadequate procedures in determining the defendant's competency to stand trial. The Lewis court noted that
 
 
 22
 [u]nder the standard the habeas petitioner must first present substantial facts to support allegations that he was not competent to stand trial.... Substantial facts are facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial."
 
 
 23
 822 F.2d at 706 (citing Bruce v. Estelle, 483 F.2d 1031, 1043 (5th Cir.1973)).
 
 
 24
 In this instance, Butler has failed to provide substantial facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to his competency. Butler merely reasserts the testimony from his mother that there was a history of mental illness in their family and that Butler received treatment until he was sixteen for his emotional problems. Such evidence is simply insufficient to raise doubts as to Butler's competency to stand trial. Neither it nor any other evidence in the record indicates that Butler was incapable of cooperating and assisting his attorney or that he was unable to understand the nature of the charges against him. Butler has failed to meet his burden in mounting a challenge in a habeas proceeding as to the adequacy of the state court procedures for determining his competency; therefore, we find no merit in his challenge to the trial court's failure to order a psychiatric evaluation.
 
 E. Voluntariness of Phillips' Confession
 
 25
 Phillips also challenges the voluntariness of his confession, which was given while he was en route from the prison to the hospital shortly after he had received a demarol injection. Phillips argues that his "free will may have been overborne by the influence of these drugs at the time of the giving of his confession." In addition, Phillips maintains, without citation to authority, that attempting to take a statement from a defendant while he is being transported from the hospital to prison and is taking pain medication is per se coercive.
 
 
 26
 As we noted earlier in this order, coercive police activity is a necessary predicate to a finding that a confession was not voluntarily given. Fazio, 914 F.2d at 955. In this instance, Phillips only alleges that the police questioned him while he was in the ambulance after he had received some pain medication. There is simply no allegation of coercive police activity except for the sweeping assertion that it is per se coercive for the police to talk to a defendant while he is taking pain medication. Phillips does not cite any authority for that proposition and we believe that in the absence of some other factor indicating coercive activity on the part of the police merely questioning the defendant while he is receiving pain medication does not call into question the voluntariness of a confession. In this instance, the record is devoid of evidence that the police engaged in coercive activity which caused Phillips' will to be overborne. As such, we find no merit in Phillips' challenge to the voluntariness of his confession.
 
 F. Brady Allegation
 
 27
 Finally, Phillips alleges that he was denied a fair trial because the state failed to disclose the impeaching evidence that a prosecution witness, Lewis, had previously been an FBI informant, as it was required to do under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). This court has noted that "[t]here is no question that in Brady, the Supreme Court held that the government must disclose evidence that is both favorable and material to the issue of guilt. Impeachment evidence, as well as exculpatory evidence, falls within the Brady rule." United States v. Dweck, 913 F.2d 365, 371 (7th Cir.1990) (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380 (1985)). However, the Dweck court also stated that
 
 
 28
 "[t]he evidence [withheld by the government] is material only if there is reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383 ... Implicit in the materiality requirement "is a concern that the suppressed evidence might have affected the outcome of the trial." United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398 (1976). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." Id. at 109-10, 96 S.Ct. at 2400.
 
 
 29
 913 F.2d at 371. Finally, the Dweck court noted that "where impeachment evidence is merely cumulative and thereby has no reasonable probability of affecting the result of the trial, it does not violate the Brady requirement." Id.
 
 
 30
 In this instance, Phillips is alleging a Brady violation resulting from the failure of the state to disclose the evidence that one of the prosecution witnesses, Lewis, had previously served as an FBI informant. While this evidence might have had some impeachment value, it does not appear to have been a material omission. The record in this case suggests that Lewis was subject to an extensive cross-examination where substantial impeaching evidence was presented to the jury. In addition, as we previously noted in this order, the record is replete with evidence of Phillips' guilt. As such, it is doubtful that the admission of the evidence that Lewis had previously served as an FBI informant would have had any effect on the outcome of the trial. Any failure to provide the evidence was not material within the meaning of Brady; thus, we find no merit in Phillips' assertion that the failure to provide this evidence to the defense resulted in a due process violation.
 
 
 31
 For all of the foregoing reasons, the decision of the district court denying habeas corpus relief to Butler and Phillips is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 **
 Pursuant to Fed.R.App.P. 43(c)(1), Thomas Richards has been substituted for Jack Duckworth